IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| IN THE MATTER OF THE SEARCH OF VARIOUS ELECTRONIC DEVICES CURRENTLY STORED AT 200 ST. PAUL PLACE SUITE 2222 BALTIMORE, MARYLAND 21202 | Case No. 18-1651 JMC |
|---|---|

## AFFIDAVIT IN SUPPORT OF A SEARCH AND SEIZURE WARRANT

I, Thomas Stevens, being first duly sworn, do hereby state and declare as follows:

1. This is an Affidavit in support of a search and seizure warrant authorizing the search of the following materials, which are also listed in Attachment A. As detailed further below, the items were recovered following the execution of a search warrant for 6603 ENGLISH OAK ROAD, APARTMENT I, BALTIMORE, MARYLAND ("Location 1") and Shawn OLIVER's vehicle a 2008 Volkswagen Passat, VIN WVWTK73C28E154634 ("Location 2"). The items are as follows:

| Item Number | Description | Location |
|---|---|---|
| "Cell Phone 1" | iPhone, IMEI: 013985008133610 | Location 1 |
| "Cell Phone 2" | Samsung Flip Phone, ESN:12811798654, MEID: A000004773C62D | Location 2 |
| "Cell Phone 3" | Coolpad Phone, Phone number: (424) 541-2818, ESN: 34260e25, IMEI: 862429035467230 | Location 1 |
| "Cell Phone 4" | ZTE Smart Phone, IMEI: 862147038640740 | Location 1 |
| "Cell Phone 5" | ZTE Smart Phone, IMEI: 860550033990600 | Location 1 |
| "Cell Phone 6" | ZTE Smart Phone, IMEI: 860550034317894 | Location 1 |
| "Cell Phone 7" | ZTE Smart Phone, IMEI: 990006830723192 | Location 1 |
| "Cell Phone 8" | LG Smart Phone, IMEI:352342-09-248986-3 | Location 1 |
| "Cell Phone 9" | iPhone, IMEI:352020077690057 | Location 1 |
| "Cell Phone 10" | LG Smart Phone, Phone number: (202) 912-0021, IMEI: 352342092487230 | Location 1 |
| "Computer 1" | Toshiba Laptop Computer | Location 2 |
| "Computer 2" | Dell Laptop Computer, Inspiron 1545 | Location 1 |

18-1651 JMC

2. The above items are hereinafter referred to collectively as the "Subject Electronic Devices" and are currently stored in a secure manner at the Drug Enforcement Administration (DEA) Baltimore District Office, located at 200 Saint Paul Plaza Suite 2222 Baltimore, MD.

3. The applied for search and seizure warrant would authorize the forensic examination of the Subject Electronic Devices for the purpose of identifying electronically stored data listed in Attachment A. The Subject Electronic Devices will be reviewed pursuant to the protocol described in Attachment B. I believe probable cause exists to believe that in the Subject Electronic Devices, there is evidence of a conspiracy to distribute and possess with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 841, 846.

4. The Subject Electronic Devices have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same condition as when the Subject Electronic Devices first came into the possession of the DEA. Any search of the Subject Electronic Devices will occur in an office or laboratory setting on a premises controlled by the DEA or their authorized representatives.

5. Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested search warrant, I have not included every detail of every aspect of the investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause. I have not, however, excluded any information known to me that would defeat a determination of probable cause. The information contained in this Affidavit is based upon my personal knowledge, my review of documents and other evidence, and my conversations with other law enforcement officers and other individuals. All conversations and statements described in this Affidavit are related in substance and in part unless otherwise indicated. This affidavit is intended

to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## AGENT BACKGROUND

6. I am a Special Agent with the DEA dealing primarily in the investigation of individuals who transport, sell and distribute illicit narcotics and narcotics proceeds. I am therefore an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in 18 U.S.C. § 2516. I have been a sworn Special Agent with the DEA for more than nine years. I have initiated and participated in many drug investigations and I have participated in the execution of numerous federal and state search warrants, and participated in the arrest of many individuals for violations of federal and state narcotics laws. Through hundreds of surveillances and interviews, I am familiar with the actions, traits, habits and terminology utilized by traffickers of controlled dangerous substances. Additionally, I have extensive experience and training in the subject of narcotics trafficking.

7. Based on my training and experience, I know that individuals involved with drug trafficking frequently use cellular telephones, communication devices and other electronic media to further their drug trafficking activities. In particular, I know that cellular phones are employed by drug traffickers to communicate with criminal associates and to facilitate drug trafficking. I also know from my training and experience in investigating drug trafficking organizations that the call histories/stored numbers, and stored text messages of cellular phones often yield evidence that leads to the identification of co-conspirators. In addition, I know based on my training and experience that narcotic traffickers frequently maintain and use numerous electronic devices (especially cellular telephones) in an effort to conceal their activities. Such electronic devices are

**18 - 1 6 5 1 JMC**

likely to contain evidence of their communications (by telephone, text message, email, social media, or otherwise) with customers, suppliers, and co-conspirators. Electronic devices kept by drug traffickers are also likely to contain the names, addresses, email addresses, and/or telephone numbers of associates and co-conspirators. Further, narcotics traffickers often take or cause to be taken photographs of themselves, their associates, their property and their drugs. These traffickers usually maintain these photographs in their possession, in locations such as their homes, vehicles, electronic devices, or on their person.

8. Based on my knowledge, training, and experience, I also know that individuals involved in the illegal distribution of dangerous controlled substances often keep and maintain records of their various illegal activities. These records take various forms. For example, records commonly concealed by traffickers, include but are not limited to: notes in code, deposit slips, records of wired money transactions, savings pass books, hidden bank accounts, photographs of co-conspirators, various forms of commercial paper, personal address books, notebooks, receipts, ledgers, travel receipts (rental receipts, airline tickets, bus tickets, and/or train tickets), money orders and other documents relating to the ordering, transportation, sale and distribution of controlled dangerous substances which may contain identifying data of the co-conspirators. In addition, I am aware that narcotics traffickers frequently maintain these records for long periods of time; sometimes even years after the drug transactions are complete. Additionally, narcotics traffickers commonly maintain books, records and other documents that identify and contain the names, addresses and/or telephone numbers of associates in their narcotics-trafficking or money-laundering activities, including, but not limited to: address books, telephones, cellphones, iPads, Tablets, computers, or personal digital assistants with stored telephone information, notes

4

reflecting telephone numbers, photographs (to include still photos, negatives, movies, slides, video tapes, and undeveloped film).

## PROBABLE CAUSE

9. In December of 2017, DEA Detroit Field Division Strike Force Group 3, contacted Baltimore HIDTA group 56 regarding the activities of James MCGLORY, the leader of a Drug Trafficking Organization (DTO) based in San Bernardino, California. In connection with the investigation, I received information from DEA Detroit about an individual named James McGlory. Some of the information was as follows: on July 10, 2017, members of DEA Detroit, Michigan executed a federal search warrant on a stash house in Novi, Michigan and DEA Detroit seized thirty-four (34) kilograms of heroin/fentanyl mix, approximately $500,000.00, and arrested three (3) individuals. In the driveway of the residence was a vehicle, which was also searched. Investigators seized one (1) kilogram of cocaine from the vehicle. A palm-print analysis was performed on the one (1) kilogram of cocaine from the vehicle and the palm-print was a match to that of James McGlory, born in 1985. Additionally, historical cell cite data reveals that Manjaro Johnson, a member of the MCGLORY DTO possessed a cellular phone that was in the vicinity of the Novi stash house on numerous occasions, where the above-described narcotics were recovered, in the days and weeks prior to the execution of the search warrant. Additionally investigators identified David Griffin as a co-conspirator and member of the MCGLORY DTO.

10. Based on this information, DEA Baltimore began investigating the travel patterns of McGlory and Johnson. DEA Baltimore determined that McGlory and Johnson were travelling to Maryland earlier on approximately April 11 and April 12. Thereafter, when Johnson arrived in Maryland on April 11, 2018, DEA surveilled Johnson and co-conspirator Griffin to a Comfort Inn in Towson, Maryland. On April 12, 2018, McGlory travelled to Maryland and travelled to that

same Comfort Inn. Also on April 12, 2018, DEA surveilled the vicinity of 6603 ENGLISH OAK ROAD, BALTIMORE, MARYLAND and investigators observed Griffin's vehicle, a Nissan Altima. On the morning of April 13, 2018, investigators observed Shawn Oliver enter a building in the vicinity of 6603 ENGLISH OAK ROAD, BALTIMORE, MARYLAND while carrying a weighted bag that appeared to contain a box.

11. Thereafter, on April 13, 2018 investigators observed Griffin and McGlory in the vicinity of 6603 ENGLISH OAK ROAD, BALTIMORE, MARYLAND. More specifically, investigators observed McGlory and Griffin walking around the side of the building and at the time, Griffin held a trash bag that he placed in the trash outside of the building. Shortly thereafter, investigators retrieved the trash and searched the bag. Inside of the bag was a label addressed to 6603 ENGLISH OAK ROAD, APARTMENT I, BALTIMORE, MARYLAND and several heat-sealed bags and rubber gloves that the investigators know are used for narcotics trafficking. Thereafter, investigators observed McGlory and Griffin as they entered a Nissan Altima, registered to Griffin, and travelled back to the Comfort Inn where they met with Manjaro Johnson in the vicinity of the room rented by Griffin.

12. Thereafter, McGlory, Griffin and Johnson entered the Altima and travelled away from the Comfort Inn. Investigators conducted an investigative car stop of the Altima at approximately 1:29 on April 13, 2018 in the vicinity of 6628 Collinsdale Road, Parkville, Maryland. Inside of the car was Griffin, who was driving, McGlory, who was in the front seat, and Johnson who was in the rear passenger seat. Thereafter, Anne Arundel County Police K-9 Miki #3448 conducted a sniff of the vehicle. TFO Jonathan Van Dyke determine that Miki alerted positively to the odor of controlled dangerous substances emanating from the interior of the vehicle. Investigators searched the vehicle but did not recover any CDS.

13.     Investigators asked McGlory, Griffin and Johnson where they were coming from. Griffin said that he came from his cousin's house two streets away. None of the defendants mentioned travelling to the vicinity of English Oak Road or the Comfort Inn. Investigators asked Griffin for keys to the car which he provided to them. Griffin also provided an additional set of keys. On that ring, there appeared to be an apartment key. Investigators tested the key from Griffin in the door to 6603 ENGLISH OAK ROAD, APARTMENT I, BALTIMORE, MARYLAND and determined that it opened the door. Noticing that a TV was on inside of the apartment, Investigators briefly entered 6603 ENGLISH OAK ROAD, APARTMENT I, BALTIMORE, MARYLAND for their safety and to prevent the potential destruction of evidence and determined that Shawn Oliver was inside of the apartment. Oliver refused to speak to investigators. The trained K-9, Kiki, also conducted a scan of the door for the apartment. Said scan was positive for the presence of the odor CDS.

14.     Based in part on the above described information, on April 13, 2018, United States Magistrate Judge Stephanie Gallagher authorized a warrant to search 6603 ENGLISH OAK ROAD, APARTMENT I, BALTIMORE, MARYLAND. Investigators executed the search warrant and recovered approximately fifteen (15) kilograms of cocaine, three (3) kilograms of heroin, half a pound of marijuana and approximately $138,749.00. Investigators know that the quantities recovered are consistent with distribution of CDS. From inside of the apartment, investigators also recovered mail addressed to Griffin (in Griffin's name but sent to a different address than 6603 ENGLISH OAK ROAD) and mail addressed to Oliver (in Oliver's name but sent to a different address than 6603 ENGLISH OAK ROAD). Additionally, investigators recovered a kilogram press used to package wholesale quantities of narcotics and a money counter, often used to count narcotics proceeds. Additionally, as enumerated in the above chart, many of

7

the Subject Electronic Devices were recovered from 6603 English Oak Road, Apartment I ("Location 1").

15. Additionally, on April 24, 2018, United States Magistrate Judge A. David Copperthite authorized a warrant to search Oliver's vehicle, a 2008 Volkswagen Passat, VIN WVWTK73C28E154634 ("Location 2"). Investigators later executed that search warrant and two of the Subject Electronic Devices were recovered from inside of Location 2.

16. I know based on my training and experience, that drug traffickers use cellular telephones, and other electronic devices such as tablets to coordinate with suppliers, customers, and co-conspirators and frequently switch phones or utilize multiple cellular telephones to evade law enforcement. Additionally, I am aware that drug traffickers use cellular telephones to communicate the patterns of activity of drug traffickers, the types and amounts of profits made by drug dealers and the methods, language and terms that are used to disguise the source and nature of the profits from their illegal drug dealings. Drug traffickers also utilized numerous cellular devices to thwart potential surveillance by law enforcement. Lastly, I know based on my training and experience that narcotics traffickers are increasingly relying on alternative modes of communication employed on electronic devices (cellular phones, tables and computers), such as the Blackberry Messenger system, Snapchat, WhatsApp and other programs, in order to evade detection by law enforcement. Based on my knowledge of the investigation into Oliver and Griffin and the above-described information, I believe that the Subject Electronic Devices will contain evidence of drug trafficking.

18 - 1 6 5 1 JMC

## CONCLUSION

17. Based on the information set forth in this affidavit, I believe probable cause exists to believe that in the Subject Electronic Devices, there is evidence of a conspiracy to distribute and possess with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 841, 846.

18. WHEREFORE, in consideration of the facts presented, I respectfully request that this Court issue a search warrant for the Subject Electronic Devices, and authorize the search and the seizure of the items described in Attachments A, according to the protocols set forth in Attachment B, where applicable, which constitute fruits, evidence and instrumentalities of violations of 21 U.S.C. §§ 841, 846, which prohibit the conspiracy to distribute and possess with intent to distribute controlled substances.

Special Agent Thomas Stevens
Drug Enforcement Administration

Sworn to before me this ___ day of June, 2018.

The Honorable J. Mark Coulson
United States Magistrate Judge

FILED ___ ENTERED
LOGGED ___ RECEIVED

JUN 20 2018

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY ___ DEPUTY

9

18 - 1 6 5 1 JMC

## ATTACHMENT A

### Items to be Searched

The following items (collectively, "the Subject Electronic Devices"):

| Item Number | Description | Location |
|---|---|---|
| "Cell Phone 1" | iPhone, IMEI: 013985008133610 | Location 1 |
| "Cell Phone 2" | Samsung Flip Phone, ESN:12811798654, MEID: A000004773C62D | Location 2 |
| "Cell Phone 3" | Coolpad Phone, Phone number: (424) 541-2818, ESN: 34260e25, IMEI: 862429035467230 | Location 1 |
| "Cell Phone 4" | ZTE Smart Phone, IMEI: 862147038640740 | Location 1 |
| "Cell Phone 5" | ZTE Smart Phone, IMEI: 860550033990600 | Location 1 |
| "Cell Phone 6" | ZTE Smart Phone, IMEI: 860550034317894 | Location 1 |
| "Cell Phone 7" | ZTE Smart Phone, IMEI: 990006830723192 | Location 1 |
| "Cell Phone 8" | LG Smart Phone, IMEI:352342-09-248986-3 | Location 1 |
| "Cell Phone 9" | iPhone, IMEI:352020077690057 | Location 1 |
| "Cell Phone 10" | LG Smart Phone, Phone number: (202) 912-0021, IMEI: 352342092487230 | Location 1 |
| "Computer 1" | Toshiba Laptop Computer, | Location 2 |
| "Computer 2" | Dell Laptop Computer, Inspiron 1545 | Location 1 |

which are currently stored in a secure manner in at the Drug Enforcement Administration Baltimore District Office, 200 Saint Paul Plaza Suite 2222 Baltimore, MD 21202 shall be searched according to the protocol listed on Attachment B for evidence relating to the offense of conspiracy to distribute and possess with the intent to distribute cocaine and other controlled dangerous substances.

_____ FILED _____ ENTERED
_____ LOGGED _____ RECEIVED

JUN 2 0 2018

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY                              DEPUTY

18 - 1 6 5 1 JMC

**ATTACHMENT B**

**Search Protocols**

This warrant authorizes the search and seizure of the following electronically stored information, contained within the items described in Attachment A:

a. digital images;

b. digital videos;

c. records of incoming and outgoing voice communications;

d. records of incoming and outgoing text messages/MMS;

e. the content of incoming and outgoing text messages/MMS;

f. voicemails;

g. e-mails;

h. voice recordings;

i. records related to the trafficking of controlled and dangerous substances including but not limited to: notes in code, deposit slips, records of wired money transactions, savings pass books, bank accounts, various forms of commercial paper, personal address books, notebooks, receipts, ledgers, travel receipts (rental receipts, airline tickets, bus tickets, and/or train tickets), money orders and other documents relating to the ordering and transportation of drugs, names, addresses and/or telephone numbers of associates.

j. contact lists; and

k. location data;

relating to the offenses of conspiracy to distribute and possess with the intent to distribute heroin, as more fully described in the Affidavit.

With regard to the cellular phones and tablets, the devices will be charged and powered on. The device and all readable and searchable contents will be downloaded to a "CelleBrite," "XRY," or similar device. The "CelleBrite," "XRY," or similar device allows the user to bypass any password protected utility on the phone. The contents downloaded on the "CelleBrite," "XRY,"

or similar device will then be copied to a readable computer disc and reviewed by your affiant. A search warrant return will be provided to the Court thereafter.

Because of the possibility that the files examined pursuant to the warrant will include information that is beyond the scope of what the United States has demonstrated the existence probable cause to search for, the search shall be conducted in a manner that will minimize to the greatest extent possible the likelihood that files or other information for which there is not probable cause to search is not viewed.

While this protocol does not prescribe the specific search protocol to be used, it does contain limitations to what the government investigators may view during their search, and the searching investigators shall be obligated to document the search methodology used in the event that there is a subsequent challenge to the search that was conducted, pursuant to the following protocol.

With respect to the search of any digitally/electronically stored information that is seized pursuant to this warrant, and described in Attachment A hereto, the search procedure shall include such reasonably available techniques designed to minimize the chance that the government investigators conducting the search will view information that is beyond the scope for which the probable cause exists.

The following list of techniques is a non-exclusive list which illustrates the types of search methodology that may avoid an overbroad search, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein:

a. Use of computer search methodology to conduct an examination of all the data contained in such computer hardware, computer software, and/or memory storage devices to determine whether data falls within the items to be seized as set forth herein by specific date ranges, names of individuals, or organizations;

b. Searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth herein;

c. Physical examination of the storage device, including digitally surveying various file directories and the individual files they contain to determine whether they include data falling within the list of items to be seized as set forth herein; and

d. Opening or reading portions of files that are identified as a result of conducting digital search inquiries in order to determine their relevance.